UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JOSHUA DUNLAP, #395806, | ) |
| :--- | :--- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:23-cv-00154 |
| | ) |
| ROBIN FISH, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Joshua Dunlap, an inmate at the Northeast Correctional Complex in Mountain City, Tennessee, has filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1, "Complaint") and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 9). Plaintiff has also filed two motions for appointment of counsel (Doc. Nos. 3, 11) and a motion for "a case history" and a copy of the Complaint to be sent to him. (Doc. No. 12).

The case is before the Court for ruling on Plaintiff's IFP application and motions and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 9) is **GRANTED** and a $350 filing fee[1] is **ASSESSED**.

---

[1] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. Id. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. Id. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to

---

civil filing fee. See 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).

This action was filed under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). To state a viable claim under Section 1983, the Complaint must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

**B. Allegations and Claims**

Plaintiff alleges that, during the period relevant to his claims in this action, he was an inmate at three different prisons within the Tennessee Department of Correction (TDOC): Riverbend Maximum Security Institution (RMSI), DeBerry Special Needs Facility (DSNF), and Northeast Correctional Complex (NECX), where he is currently incarcerated. (Doc. No. 1 at 1). He claims that his rights under the First and Eighth Amendments were violated because of official misconduct that occurred during his time at all three prisons, as described below.

3

Plaintiff alleges that, while he was housed in "unit 3" at RMSI, officials there allowed 3 or 4 maximum-security inmates to leave their cells and congregate outside of Plaintiff's cell door and outside of the back window of his cell (which looked out onto the yard), in order to harass Plaintiff with threats against him and his family. (Id. at 3–4, 17).[2] He further alleges that, beginning at RMSI and continuing at both DSNF and NECX, he has been harassed day and night by the voices of 3 or 4 "outside" people (one of whom is female) "following [him] around from prison to prison." (Id. at 3, 17–18). Plaintiff first thought these people (identified in the Complaint as "John Doe 1," "John Doe 2," "John Doe 3," and "Jane Doe") were being allowed physically to enter the prisons, but he "later learned that they were actually placing a wifi speaker in the shaft[/]room next to [Plaintiff's] cell where said [Defendants] could harass him day and night through vent shafts from prison to prison." (Id. at 3).[3] Plaintiff claims that these unknown Defendants are working with TDOC, voicing threats "to chop him and his family up" through a "radiowave device placed in [the] vent shaft next to [his] cell." (Id. at 4–5). Plaintiff alleges that he twice attempted suicide due to the torment of hearing voices all day and night. (Id. at 5).

---

[2] Some details in this factual summary are drawn from Plaintiff's internal prison grievances attached to the Complaint. (Doc. No. 1 at 15–20). The Court may consider such attachments in screening the Complaint under the PLRA. See Hardy v. Sizer, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) (finding dismissal at initial screening proper based on "[r]eview of the documents attached to the complaint"); see also Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (allowing consideration of "any exhibits attached" to the complaint when reviewing for whether a plausible claim to relief is stated).

[3] Plaintiff's allegations about initially hearing voices at RMSI are confusingly associated with his allegation, reproduced below, that the message conveyed by the voices was first conveyed by an RMSI employee, Counselor Douglas: "On or about June to August of 2022 defendant Counselor Douglas entered unit 3-D pod at [RMSI] with her cell phone device and read off a text message or e-mail from most likely 'unknown entity' voicing through radiowave device placed in vent shaft next to Mr. Dunlap's cell via speakerphone to harass Mr. Dunlap." (Doc. No. 1 at 5). Plaintiff reiterates that "these text or emails are believed to come from the source on the other end of the radiowave device placed in vent shaft," and that "Counselor Douglas was a vessel for said source to carry out threats towards Mr. Dunlap and his family." (Id.).

Plaintiff claims a violation of his First Amendment rights, asserting that the threats and harassment are in retaliation for his filing of "grievances, as well as the filing of this lawsuit." (Id. at 4). He further claims that the harassment campaign against him amounts to cruel and unusual punishment under the Eighth Amendment. (Id.). As relief, the Complaint seeks an award of damages including compensation "for pain, suffering, mental and emotional distress." (Id. at 6).

In two documents labeled "writ of habeas corpus" and docketed as attachments to the Complaint, Petitioner seeks to be removed from TDOC custody, not because of the invalidity of his conviction or sentence, but because of the danger to his life from the device "placed in [his] body" to keep him hostage to "TDOC staff deliberately placing his mind, [and] body, in the direct control" of the Doe Defendants "via wifi technology devices." (Doc. Nos. 1-1, 1-2).

Plaintiff has also filed three unsworn statements in support of his claim that prison officials placed a speaker device in his vent. The first two statements were apparently written by Plaintiff and signed by fellow inmates (one of whom added a remark in his own hand) who are or were cellmates of his and who purportedly heard the voices. (Doc. Nos. 5, 6). The last statement is Plaintiff's. (Doc. No. 7). In it, he reiterates his allegations and adds that there may be a "connection . . . from Texas to outside entity John Doe 1, 2, 3 and Jane Doe." (Id.). He repeats his suspicion that these Defendants are "[l]inked to Texas" in a cover letter submitted with one of the other statements. (Doc. No. 5-1).

Finally, in a later-filed "Habeas Corpus Motion," Petitioner asks to be moved from state to federal custody, repeating his claim that "an unknown technology [was] placed into his body by the Government without his knowing." (Doc. No. 10 at 1). This implanted device controls his thoughts, emotions, and body movements, and allows an unknown person within TDOC to "burn [his] body from the inside" and "suppress [his] lungs from breathing right." (Id. at 2–3).

**C. Analysis**

Plaintiff claims violations of his constitutional rights in two discrete factual scenarios. The first scenario allegedly occurred at RMSI when 3 or 4 maximum-security inmates were permitted to leave their cells and congregate outside of his cell in order to threaten and harass him. (Doc. No. 1 at 17). He alleges that he waited 6 months to file a grievance over this matter, "due to intimidation and threats on his and his family's life if he pursued any legal or penitentiary complaints." (Id. at 3). He claims that his "grievances, as well as the filing of this lawsuit, constitute protected conduct under the First Amendment," and that allowing the maximum-security inmates near his cell constitutes an adverse action "capable of deterring a person of ordinary firmness from continuing or engaging in constitutionally protected conduct." (Id. at 4).

These allegations do not support a plausible First Amendment retaliation claim. To establish such a claim, Plaintiff must allege not only protected conduct and adverse action, but also causation—that is, that "the adverse action was taken at least in part because of the exercise of the protected conduct." Siggers-El v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394, 393 (6th Cir. 1999)). The only protected conduct alleged in this case is Plaintiff's filing of grievances and the instant Complaint, all of which took place after the misconduct involving the maximum-security inmates. But to plausibly claim retaliation, Plaintiff must assert that his protected conduct motivated Defendants' adverse action, not the other way around. See King v. Zamiara, 680 F.3d 686, 695 (6th Cir. 2012) ("[W]e say protected speech causes an adverse action if the speech motivates an individual actor to take acts that then proximately cause an adverse action."). His retaliation claim based on these facts is thus subject to dismissal for failure plausibly to allege adverse action that was causally linked to his protected conduct. Even if the Court were to liberally construe this facet of the Complaint as claiming that

6

being threatened with inmate violence interfered with Plaintiff's right to access the courts, rather than his right to be free from retaliation, such a claim must be supported by an allegation that an "actual injury" to a "nonfrivolous" legal claim resulted from the threats. Lewis v. Casey, 518 U.S. 343, 349, 353 & n.3 (1996). Plaintiff does not allege any such injury here.

As to the other set of facts offered to support Plaintiff's claims of retaliation and cruel and unusual punishment—having to do with the voices tormenting him via a "wifi speaker" playing through the vent in his cells in all three prisons, and/or via a device implanted in his body—such allegations and claims are frivolous. Dismissal for frivolity is appropriate when claims are presented without "an arguable or rational basis in law or fact." Huey v. Raymond, 53 F. App'x 329, 330 (6th Cir. 2002) (citing, e.g., Neitzke v. Williams, 490 U.S. 319, 325, 327–28 (1989)). Claims that are legally frivolous "include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist," while claims that are factually frivolous present "fantastic or delusional scenarios." Id.; see also Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990) ("The facts must be delusional to be frivolous.").

Here, Plaintiff's claims depend on a factual scenario that is simply untenable. In short, the claim that Plaintiff has been relentlessly tormented by TDOC employees at prisons over three hundred miles apart,[4] using an electronic device either implanted in his body or hidden in the vents to deliver the sound of threatening voices from strangers believed to reside in Texas—is delusional and factually frivolous, even though two other inmates purport (in unsworn statements) to have

---

[4] RMSI and DSNF are located in Nashville, Tennessee, and NECX is located in Mountain City, Tennessee. According to online sources, the driving distance between these cities is 333 miles. See https://www.travelmath.com/drive-distance/from/Nashville,+TN/to/Mountain+City,+TN (last visited July 26, 2023).

heard the voices as well.[5] The statements from these inmates echo the Complaint's assertion of voices from the vents at DSNF and NECX—an assertion that would ordinarily be entitled to the presumption of truth on initial review. But district courts have "discretion to refuse to accept without question the truth of . . . allegations that are 'clearly baseless,' a term encompassing claims that may be fairly described as fanciful, fantastic, delusional, wholly incredible, or irrational." Huey, 53 F. App'x at 331 (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Here, the factual allegations before the Court, whether made in the Complaint, its attachments, Plaintiff's other filings,[6] or the statements of other inmates, are wholly incredible, clearly baseless, and insufficient to ground Plaintiff's claims of retaliation under the First Amendment or cruel and unusual punishment under the Eighth Amendment.

### III. CONCLUSION

For these reasons, this action is hereby **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The Court **CERTIFIES** that any appeal of this decision would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

---

[5] The Court notes that one of these inmates, Mr. James Hooper, was evidently housed in the cell adjoining Plaintiff's at DSNF and "shared [the] same vent shaft" where the "speaker device was"—"if," as Mr. Hooper cryptically notes, "you wanna call it a speaker." (Doc. No. 6 at 1). Then, Mr. Hooper and Plaintiff "followed each other back to Northeast Prison in Mountain City and w[ere] placed as cellmates." (Id.). When they were subsequently moved to a second cell at NECX, the voices coming from the vent shaft allegedly moved with them. (Id.).

The other inmate, Mr. Tracy Jones, signed a statement reporting that he was assigned to be Plaintiff's cellmate at NECX on March 31, 2023, and "witness[ed] that there is a speakerphone device in our vent shaft" from which "[a] woman, a man and their son (who sounds underage) harass him day and night[,] [t]hreatening to kill him" and "disrespect[ing] Christ" "while he's studying his religion." (Doc. No. 5 at 1).

[6] The Court does not construe Plaintiff's filings for "habeas corpus" relief (whether submitted with his Complaint or subsequent thereto) to assert that he is "in custody in violation of the Constitution of laws or treaties of the United States" under 28 U.S.C. §§ 2241(c)(3) and 2254(a). But to be clear, the dismissal of this civil rights case is without prejudice to Plaintiff's ability to seek relief from his conviction or sentence in a properly filed petition for the writ of habeas corpus.

In light of this disposition, Plaintiff's pending motions for counsel (Doc. Nos. 3, 11) are **DENIED** as moot. However, Plaintiff's motion for a case history and copy of the Complaint (Doc. No. 12) is **GRANTED**. The Clerk **SHALL** mail a docket sheet and a copy of the Complaint along with Plaintiff's copy of this Order.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE